**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.,
501 Front Street
Norfolk, VA 23510

*Plaintiff,*

vs.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
200 Independence Avenue, S.W.
Washington, D.C. 20201,

NATIONAL INSTITUTES OF HEALTH,
9000 Rockville Pike
Bethesda, MD 20892, and

NATIONAL INSTITUTE OF MENTAL HEALTH,
6001 Executive Boulevard
Bethesda, MD 20892,

*Defendants*.

**Case No.**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT**

1. In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff People for the Ethical Treatment of Animals ("PETA") seeks information regarding the treatment of nonhuman primates and other animals in experiments funded or overseen by Defendants United States Department of Health and Human Services ("HHS"), National Institutes of Health ("NIH"), and National Institute of Mental Health ("NIMH") (collectively "Defendants"). As detailed below, Plaintiff has sought this information through seven FOIA requests submitted between January 28, 2020, and October 1, 2020 (collectively "the Requests"). However, Plaintiff's Requests have been languishing without any final response from Defendants for between 5 and 14 months—far longer than the twenty working day deadline that Congress established in FOIA. By failing to produce to Plaintiff all non-exempt information responsive to Plaintiff's FOIA requests, Defendants have improperly withheld this information in violation of FOIA.

2. The information that Defendants have improperly withheld is critical to Plaintiff's ongoing efforts to educate the public about how Defendants are implementing their statutory responsibilities and spending taxpayer money on animal experimentation, and especially on experiments on nonhuman primates. Defendants have spent tens of millions of dollars of taxpayer money over the past several years subjecting primates to certain painful, frightening, and unnecessary experiments and surgical procedures which have not resulted in any new treatments or cures for human mental illness.

3. All of PETA's Requests were submitted to NIMH with the intent of understanding and educating the public about the agency's activities by obtaining information about the nature, methods, justifications, and results of the animal experiments that the agency has funded, and which are the focus of the Requests, which the public has a right to know pursuant to the FOIA.

4. Defendants constructively denied the Requests by failing to make determinations and provide responsive records for the Requests within the timeframes the FOIA mandates.

5. PETA has constructively exhausted all administrative remedies and informal avenues to obtain the requested records, and is therefore entitled to judicial review of this matter, as Defendants have failed to provide responsive information or issue a final response to the Requests within the deadlines established by the FOIA.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7. Venue is properly vested in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**PARTIES**

8. PETA is a Virginia non-stock corporation and an animal protection charity dedicated to protecting animals—including those used in experiments—from neglect, abuse, and all forms of cruelty. PETA undertakes these efforts through investigations, research, animal rescues, legislation, and public education. PETA submitted the Requests at issue. PETA has an office at 1536 16th St NW, Washington, DC 20036.

9. Defendant HHS is a federal agency subject to the FOIA, and, upon information and belief, has possession, custody or control of information responsive to some or all of the Requests.

10. Defendant NIH is a component of HHS, is a federal agency subject to the FOIA, and, upon information and belief, has possession, custody or control of information responsive to some or all of the Requests.

11. Defendant NIMH is a component of NIH, is a federal agency subject to the FOIA, and has possession, custody or control of information responsive to some or all of the Requests.

## STATUTORY FRAMEWORK

12. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp*., 493 U.S. 146, 152 (1989) (citations omitted). The FOIA was enacted to "permit access to official information long shielded unnecessarily from public view" by creating a "right to secure such information from possibly unwilling official hands." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). "[D]isclosure, not secrecy, is the dominant objective of the Act." *John Doe*, 493 U.S. at 152 (citation omitted).

13. The FOIA requires agencies of the federal government to conduct a reasonable search for requested records and to release them to a requester, unless one of nine specific statutory exemptions applies to the requested information. 5 U.S.C. § 552(a)(3), (b).

14. The FOIA requires federal agencies to release all non-exempt segregable information that is requested. *Id*. § 552(b).

15. Upon receiving a FOIA request, an agency generally has twenty working days to respond, *id*. § 552(a)(6)(A)(i).

16. In "unusual circumstances," an agency may extend the FOIA's standard deadline by an additional ten working days and, in these circumstances, must specify "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i).

17. A requester has exhausted administrative remedies "if the agency fails to comply" with FOIA's statutory deadlines. *Id*. § 552(a)(6)(C)(i). In that event, the FOIA authorizes the requester to invoke the jurisdiction of a federal court to obtain the requested information. *Id*. § 552(a)(4)(B).

**FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF**

18. As part of its mission to protect animals from inhumane treatment, PETA regularly engages in efforts to educate the public regarding the treatment of animals in scientific and medical experiments, particularly experiments funded through U.S. taxpayer dollars. Because Defendants NIH and NIMH engage in and/or fund experiments that treat animals inhumanely, PETA regularly submits FOIA requests to obtain information about how these federal agencies use public resources in ways that affect animals.

19. Over the past thirty years, Defendants NIH and NIMH have funded numerous experiments, and authorized or approved federal employees to conduct experiments, that cause irreparable damage and significant pain and distress to non-human primates. These experiments involve highly invasive brain surgeries that systematically destroy portions of primates' brains to determine what impacts these brain surgeries have on primates' behavior and cognition. Such experiments often involve the removal of a portion of a primate's skull to expose the brain, and the injection of toxins to cause permanent brain damage or the physical removal of brain tissue. In some such experiments, primates with damaged brains are then exposed to stimuli designed to provoke fear or another strong emotional reaction, such as exposure to fake snakes or other facsimiles of animals that primates instinctively fear.

20. Highly invasive experiments that permanently damage primates' brains cause irreparable harm to treated primates, as well as significant pain and suffering. For example, records that PETA previously obtained from NIMH through FOIA requests reveal that primates subjected to experiments involving brain surgery display "stereotypic behaviors," which are repetitive motions that indicate trauma, or pull out their fur, another sign of trauma. Additionally, despite the fact that the primates involved in these experiments are social animals who require regular interaction in order to maintain their health and well-being, primates subject to these experiments

are often housed alone on a permanent basis, causing further suffering. Primates subjected to these types of experiments may also be killed once the experiments conclude.

21.    Similarly, NIH and NIMH have also regularly funded and/or authorized experiments that cause irreparable harm to the brains of rats and mice and expose these animals to various stressful conditions. These experiments subject animals to chemicals that kill brain cells, then expose these permanently brain-damaged animals to stress, for example through electric shocks or "forced swim tests" that involve dropping animals into tanks of water to determine how long they will attempt to save their lives by swimming.

22.    NIH and NIMH have expended vast sums of taxpayer dollars on such experiments, but the experiments have failed to yield any treatment of human disease or mental illness. To PETA's knowledge, NIH and NIMH have spent at least roughly $50 million funding such invasive experiments on primates' brains, as well as the brains of other animals. However, to PETA's knowledge, although these experiments have resulted in scientific publications, they have not led to any treatments that improve human physical or mental health.

23.    FOIA requests provide the public's principal tool for obtaining information about the treatment of primates and other animals in experiments funded or conducted by NIH and NIMH. Although experiments conducted or funded by NIH and NIMH may lead to the publication of articles in scientific journals, these articles are often inaccessible to the public, both because accessing such articles frequently requires costly subscriptions and because understanding such scientific articles may require specialized education or expertise. NIH and NIMH generally do not make available to the public information about the acquisition, handling, transport, veterinary care, or pain and suffering of primates used in experiments.

24. To better understand NIH and NIMH's treatment of primates and other animals in experiments, and to educate the public about these agencies' activities and expenditures of public resources, PETA submitted a series of FOIA requests detailed below. These FOIA requests seek information about the procurement, treatment, and disposition of primates and other animals subject to experiments funded or conducted by NIH and NIMH. Additionally, through these FOIA requests, PETA seeks information about how NIH and NIMH have reacted to PETA's prior efforts to obtain information and raise public awareness regarding the agencies' treatment of captive primates.

25. PETA intends to use the information obtained through these FOIA requests to educate the public regarding the conduct of NIH and NIMH, the agencies' imprudent use of federal funds for experiments that do not yield any therapeutic value for humans, and the inhumane—and possibly unlawful—treatment of non-human primates in the charge of these federal agencies.

## FIRST REQUEST: AGENCY REFERENCE NO. 53447

26. On or about January 28, 2020, PETA requested from NIMH certain information pursuant to the FOIA ("First Request," agency reference number 53447).

27. The First Request stated:

> **From the period of January 1, 2015 to the present, all videographic and photographic records related to or containing information about experiments on animals conducted by, or under the direction of, NIMH principal investigator Heather Cameron, and funded by, and/or otherwise subject to the terms of, National Institutes of Health project number 1ZIAMH002784 titled, "Neurogenesis of the Adult Brain."**
>
> **From the period of January 1, 2015 to the present, all animal study proposals (ASPs) submitted by Heather Cameron and/or associated with project number 1ZIAMH002784 titled, "Neurogenesis of the Adult Brain."**

28. The First Request reasonably described the records sought.

29. On February 4, 2020 Defendant NIMH's FOIA officer informed PETA that NIMH would not timely provide responses, and inquired if PETA would stipulate to the redaction of animal locations and the names/identifiers of secondary staff from responsive records, and if PETA would accept samples of responsive photos and videos rather than all such photos and videos.

30. On February 7, 2020, PETA informed Defendant NIMH's FOIA officer that PETA agreed to the redaction of animal locations and the names/identifiers of secondary staff from responsive records, and that for this Request PETA would accept samples of responsive photos and videos in lieu of all such photos and videos.

31. Later on February 7, 2020, Defendant NIMH's FOIA officer contacted PETA and acknowledged receipt of the PETA communication described in the previous paragraph.

32. On December 14, 2020, PETA contacted Defendant NIMH's FOIA officer to request an update about NIMH's response to the First Request.

33. On December 15, 2020, Defendant NIMH's FOIA officer contacted PETA and acknowledged receipt of the PETA communication described in the previous paragraph.

34. On January 12, 2021, Defendant NIMH's FOIA officer contacted PETA and stated NIMH's response to the First Request is "ready for release, but is pending review at NIH FOIA."

35. As of the date of this pleading, NIMH still has not produced records responsive to the First Request, a final determination for the Request, or a timeframe for a response.

36. NIMH constructively denied the First Request by failing to make determinations and provide responsive documents within the timeframes the FOIA mandates.

**SECOND REQUEST: AGENCY REFERENCE NO. 53579**

37. On or about February 14, 2020, PETA requested from NIMH certain information pursuant to the FOIA ("Second Request," agency reference number 53579).

38. The Second Request stated:

> **I am writing to request documents related to five monkeys used in Principal Investigator (PI) Elisabeth Murray's project, "Neural Mechanisms of Reward Processing and Emotion" (supported by the intramural award ZIAMH002887). In videos received by PETA from the National Institute of Mental Health, the five monkeys of interest are identified as: Beamish, Guinness, Jaws, Nick Nack, and Sam Smith.**
>
> **I am requesting copies of the following items:**
>
> 1. **Acquisition records for the five monkeys identified above;**
> 2. **The complete veterinary clinical records from the National Institutes of Health (NIH) for the five monkeys identified above;**
> 3. **The complete list of all surgical procedures performed on the five monkeys identified above while they were held at the NIH; and**
> 4. **All NIH pathology and/or necropsy records/reports for the monkeys identified above.**
>
> **Also, for the period from January 1, 2016 to the date of fulfillment, we are requesting copies of the following items:**
>
> 1. **Any and all communications, including but not limited to emails, text messages, letters, memoranda, notes of conversations, reports, records, and site inspections, between NIH employees and the members of PI Murray's laboratory that reference the acquisition, health, wellbeing and/or care of the five monkeys identified above.**

39. The Second Request reasonably described the records sought.

40. NIH emailed PETA on February 14, 2020 to acknowledge receipt of the Second Request.

**<u>THIRD REQUEST: AGENCY REFERENCE NO. 53812</u>**

41. On or about March 26, 2020, PETA requested from NIMH certain information pursuant to the FOIA ("Third Request," agency reference number 53812).

42. The Third Request stated:

> **PETA requests copies of all records dated January 1, 2020, to the date this request is fulfilled—including but not limited to emails, letters, text messages, memoranda, and reports on government-issued devices or personal devices and records of instant messages from applications including but not limited to Confide, WhatsApp, Slack, and Signal—pertaining to experiments on monkeys carried out by National Institutes of Health Principal Investigator (PI) Elisabeth Murray.**
>
> **I am particularly interested in documents generated in response to PETA's campaign focused on these experiments. Please exclude copies of form e-mails received by the NIH from concerned members of the public that may have been forwarded to different offices within NIH.**
>
> **I voluntarily agree to have the following information redacted from the documents that are found to be responsive to this request: all telephone numbers, room numbers, and the names of secondary individuals (e.g. administrative support/clerical/clinical staff).**

43. The Third Request reasonably described the records sought.

44. NIH emailed PETA on March 27, 2020 to acknowledge receipt of the Third Request.

**<u>FOURTH REQUEST: AGENCY REFERENCE NO. 54272</u>**

45. On or about May 16, 2020, PETA requested from NIMH certain information pursuant to the FOIA ("Fourth Request", agency reference number 54272).

46. The Fourth Request states:

> **I am writing to request documents related to Principal Investigator (PI) Elisabeth Murray's project, "Neural Substrates of Sensory Memory, Reward, and Emotion" (Proposal LN20 ).**

> **For the period from January 1, 2019, to the present, I am requesting copies of the following items:**
>
> **1. Copies of acquisition records and disposition records for monkeys used in the project specified above; and**
>
> **2. Copies of all adverse event reports associated with the project specified above.**
>
> **Also, for the period from April 25, 2019, to the present, I am requesting copies of all videographic records collected for the project specified above.**

47. The Fourth Request reasonably described the records sought.

48. NIH emailed PETA on May 16, 2020 to acknowledge receipt of the Fourth Request.

**FIFTH REQUEST: AGENCY REFERENCE NO. 54483**

49. On or about May 27, 2020, PETA requested from NIMH certain information pursuant to the FOIA ("Fifth Request", agency reference number 54483).

50. The Fifth Request states:

> **I am writing to request documents related to the National Institutes of Health (NIH) Nonhuman Primate (NHP) Recycling Program. In particular, for the period from January 1, 2019, to the present, I request any NHP census or inventory documents associated with this program.**
>
> **Also, for the period from January 1, 2019, to the present, I request copies of the following documents for monkeys acquired by NIH Principal Investigator Elisabeth Murray from the NIH NHP Recycling Program for use in her protocols:**
>
> **1. Acquisition records for any monkeys identified above;**
>
> **2. The complete veterinary clinical records from the NIH for the monkeys identified above, including for the period before they were transferred to PI Murray;**
>
> **3. The complete list of all surgical procedures performed on the monkeys identified above while they were held at the NIH, including before they were transferred to PI Murray; and**

    **4. All NIH pathology and/or necropsy records/reports for the monkeys identified above.**

51. The Fifth Request reasonably described the records sought.

52. NIH emailed PETA on May 27, 2020 to acknowledge receipt of the Fifth Request.

**SIXTH REQUEST: AGENCY REFERENCE NO. 55141**

53. On or about September 19, 2020, PETA requested from NIMH certain information pursuant to the FOIA ("Sixth Request", agency reference number 55141).

54. The Sixth Request states:

**For the period from February 1, 2020, to the present, I am writing to request copies of the following documents:**

**1. Any and all correspondence, electronic or otherwise and including but not limited to emails and text messages on government-issued devices or personal devices and records of instant messages from applications including but not limited to Confide, WhatsApp, Slack, and Signal, between Joshua Gordon, Director of the National Institute of Mental Health (NIMH), and any employees of the National Institutes of Health (NIH), related to PETA's campaign focused on experiments carried out by Elisabeth Murray;**

**2. Any and all correspondence, electronic or otherwise and including but not limited to emails and text messages on government-issued devices or personal devices and records of instant messages from applications including but not limited to Confide, WhatsApp, Slack, and Signal, between Joshua Gordon and any employees of the NIH, related to Freedom of Information Act requests submitted by PETA to the NIH/NIMH; and**

**3. Any and all correspondence, electronic or otherwise and including but not limited to emails and text messages on government-issued devices or personal devices and records of instant messages from applications including but not limited to Confide, WhatsApp, Slack, and Signal, between Joshua Gordon and any persons external to the NIH, related to PETA's campaign focused on experiments carried out by Elisabeth Murray.**

> **Please exclude copies of form e-mails received by the NIH from concerned members of the public that may have been forwarded to different offices within NIH.**
>
> **I voluntarily agree to have the following information redacted from the documents that are found to be responsive to this request: all telephone numbers, room numbers, and the names of secondary individuals (e.g. administrative support/clerical/clinical staff).**

55. The Sixth Request reasonably described the records sought.

56. NIH emailed PETA on September 19, 2020 to acknowledge receipt of the Sixth Request.

**SEVENTH REQUEST: AGENCY REFERENCE NO. 55191**

57. On or about October 1, 2020, PETA requested from NIMH certain information pursuant to the FOIA ("Seventh Request", agency reference number 55191).

58. The Seventh Request states:

> **For the period from February 1, 2020, to the present, I am writing to request copies of the following documents:**
>
> **1. Any and all correspondence, electronic or otherwise and including but not limited to emails and text messages on government-issued devices or personal devices and accounts, and records of instant messages from applications including but not limited to Confide, WhatsApp, Slack, and Signal, between Joshua Gordon, Director of the National Institute of Mental Health (NIMH), or any representatives thereof, and representatives of the American Psychological Association (APA), related to PETA's campaign focused on experiments carried out by Elisabeth Murray;**
>
> **2. Any and all correspondence, electronic or otherwise and including but not limited to emails and text messages on government-issued devices or personal devices accounts, and records of instant messages from applications including but not limited to Confide, WhatsApp, Slack, and Signal, between Joshua Gordon, Director of the National Institute of Mental Health (NIMH), or any representatives thereof, and representatives of the Federation of Associations in Behavioral**

**and Brain Sciences, related to PETA's campaign focused on experiments carried out by Elisabeth Murray; and**

**3. Any and all documentation related to the new coalition, the Friends of NIMH, including correspondence, electronic or otherwise and including but not limited to emails and text messages on government-issued devices or personal devices and accounts, and records of instant messages from applications including but not limited to Confide, WhatsApp, Slack, and Signal, related to this new coalition.**

**Please exclude copies of form e-mails received by the NIH from concerned members of the public that may have been forwarded to different offices within NIH.**

**I voluntarily agree to have the following information redacted from the documents that are found to be responsive to this request: all telephone numbers, room numbers, and the names of secondary individuals (e.g. administrative support/clerical/clinical staff).**

59. The Seventh Request reasonably described the records sought.

60. NIH emailed PETA on October 1, 2020 to acknowledge receipt of the Seventh Request.

## GROUPED COMMUNICATIONS REGARDING THE SECOND THROUGH SEVENTH REQUESTS

61. As of November 6, 2020, PETA had not received final determinations, responsive information, or any meaningful updates or timetables with respect to its Second through Seventh Requests.

62. PETA left voicemail messages with the Defendant NIMH's FOIA officer on November 6, 2020 and November 10, 2020 seeking an update about NIMH's responses to the Second through Seventh Requests.

63. PETA emailed Defendant NIMH's FOIA officer on November 11, 2020 seeking an update about NIMH's responses to the Second through Seventh Requests.

64. On November 16, 2020, Defendant NIMH's FOIA officer emailed PETA to inform PETA that NIMH is still processing the Second through Seventh Requests.

65. On November 18, 2020, PETA emailed Defendant NIMH's FOIA officer to request an estimated date of completion with respect to NIMH's processing of the Second through Seventh Requests.

66. On November 20, 2020, Defendant NIMH's FOIA officer responded that it could not provide an accurate estimated completion date but would provide a more substantive update the following week.

67. On November 24, 2020, Defendant NIMH's FOIA officer emailed PETA and stated the Second through Seventh Requests are still being processed but are delayed due to backlogged cases.

68. On December 1, 2020, PETA emailed Defendant NIMH's FOIA officer to emphasize the urgency of the Requests.

69. On December 2, 2020, Defendant NIMH's FOIA officer responded by again emphasizing the backlog of cases as the reason for the delay and providing additional information about the backlog and the number and laboriousness of other cases in the queue. Defendant NIMH's FOIA officer also inquired if PETA was agreeable to reducing the scope of the Second through Seventh Requests. Defendant NIMH's FOIA officer also inquired if PETA agreed to the redaction of secondary names and identifiers, and locations, from any documents released in response to the Second Request.

70. On or about December 4, 2020, PETA informed Defendant NIMH's FOIA officer it would not reduce the scope of the Second through Seventh Requests. However, PETA informed Defendant NIMH's FOIA officer that PETA agreed to the redaction of secondary names and

identifiers, and locations, from any documents released in response to the Second Request. PETA also informed Defendant that PETA agreed to reduce the scope of the Fourth Request by removing the demand for videos (videographic records).

71.     On December 8, 2020, Defendant NIMH's FOIA officer acknowledged that PETA declined to reduce the scope of the Second through Seventh Requests, but that PETA agreed to secondary identifiers and locations being redacted from any response to the Second Request, and agreed to reduce the scope of the Fourth Request by removing the demand for videos.

72.     As of the date of this pleading, NIMH still has not produced information responsive to the Second through Seventh Requests, final determinations for the Requests, or timeframes for responses.

73.     NIMH constructively denied the Second through Seventh Requests by failing to make determinations and provide responsive information within the timeframes the FOIA mandates.

## PLAINTIFF'S CLAIMS FOR RELIEF

### COUNT ONE

74.     Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

75.     The First through Seventh Requests seek "agency" records within Defendants' possession and control.

76.     There is no basis to withhold, in whole or in part, the information or records sought by the First through Seventh Requests and Defendants have wrongfully withheld the information or records in violation of the FOIA, 5 U.S.C. §§ 552(a)(6)(A) and (a)(4)(B).

77. By failing to provide an estimated date on which Defendant would complete a response to Plaintiff's FOIA Requests despite Plaintiff's repeated pleas for an estimated completion date, Defendants are in violation of FOIA's requirement that agencies must provide an estimated date by which the agency will respond to a request. *See* 5 U.S.C. § 552(a)(7)(B)(ii).

78. Plaintiff is being irreparably harmed by reason of Defendants' FOIA violations, and Plaintiff will continue to be irreparably harmed unless Defendants are compelled to conform their conduct to the requirements of the law.

79. Plaintiff is entitled to declaratory relief finding that Defendants have violated the FOIA and that Plaintiff is immediately entitled to receive all information or records responsive to the First through Seventh Requests.

80. Plaintiff is further entitled to injunctive relief, ordering Defendants to immediately produce copies of all information or records responsive to the First through Seventh Requests without further delay.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court:

A. Declare that Defendants' failure to provide PETA with all non-exempt information or records responsive to PETA's Requests described above, is in violation of the FOIA;

B. Order Defendants to immediately produce to PETA, and at no cost to PETA, all non-exempt responsive information or records, and any required indexes of any responsive information or records withheld under a claim of exemption;

C. Enjoin Defendants from continuing to withhold responsive records;

D. Maintain jurisdiction over this action until Defendants comply with the FOIA and all orders of this Court;

E. Award PETA its reasonable costs, litigation expenses, and attorneys' fees in prosecuting this civil action under the FOIA, 5 U.S.C. § 552(a)(4)(E); and

F. Grant such further relief as the Court may deem just and proper.

Dated: May 6, 2021

Respectfully submitted,

/s/ William N. Lawton
William N. Lawton
D.C. Bar No. 1046604
EUBANKS & ASSOCIATES PLLC
1331 H Street NW, Suite 902
Washington, DC 20005
(202) 556-1243
nick@eubankslegal.com

**FOUNDATION TO SUPPORT ANIMAL PROTECTION (PETA FOUNDATION)**
501 Front Street
Norfolk, Virginia 23510
(757) 622-7382 Telephone
**By: /s/Aaron Frazier**
**AARON FRAZIER***
New York State Bar No. 5187869
AaronF@PetaF.org

**Pro hac vice* application forthcoming

**ATTORNEYS FOR PLAINTIFF PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.**